# THE OHIO & MISSISSIPPI RAILWAY COMPANY

## v.

## WILLIAM SIMMS, ADMINISTRATOR.

*Railroads—Negligence of—Immoderate Rate of Speed—Ordinance— Negligence of Postal Clerk—Throwing of Mail Sacks.*

1. A railroad company must, in the use of its franchise, so exercise its rights as not to negligently injure others, and is responsible for the negligent acts of its servants, and for the habitual carelessness which it knows of and permits to be practiced by others on its trains, and is also liable for the negligence of any other company or person whom it permits to use its road, and this rule applies to postal clerks.

2. A railroad company permitting its train boys to sell papers upon its depot platforms to citizens of towns through which its road passes, is responsible for injuries to such persons occasioned by the wilful negligence of its servants in running its trains at a high and unlawful rate of speed, and the throwing of mail sacks from such swiftly moving trains upon the same.

3. In the case presented, this court holds as proper, evidence going to show that people usually came upon the platform when trains arrived, without objection by defendant; that it was likewise proper to introduce evidence touching the practice of throwing mail sacks from moving trains upon the platform, but that it was not proper to permit the plaintiff to show by a witness that the latter was struck by a mail sack near the platform, two years before.

4. Upon the question of damages in such case, it is improper to admit evidence touching the expense of supporting the family of the person killed per year at the time of the death. The damage recoverable is just compensation for the loss of means of support which deceased might have provided had he lived.

5. An instruction in such case, setting forth that defendant is liable for all damages occasioned by a certain negligent act, should not be given.

[Opinion filed June 21, 1892.]

APPEAL from the Circuit Court of Lawrence County; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

Messrs. POLLARD & WERNER, for appellant.

Messrs. GEE & BARNES, for appellee.

O. & M. Ry. Co. ·v. Simms.

GREEN, P. J. Appellee, administrator of the estate of Andrew J. Lackey, brought this suit under the statute to recover damages for the death of the intestate, alleged to have resulted from injuries occasioned by defendant's negligence. This negligence, as charged in the plaintiff's declaration, is in running defendant's train at an immoderate rate of speed through the city of Sumner, and at a rate forbidden by the city ordinance, and permitting the postal clerk upon the postal car in said train, while the train was running at such speed, to carelessly throw from the car upon defendant's station platform a heavy mail bag, which struck deceased and injured him, and by reason of the injuries so received his death resulted. It is also averred that defendant knowingly and wilfully permitted the postal clerks in charge of the mail to habitually, in a careless, negligent and improper manner, for many days prior to the day deceased was injured, to throw out heavy mail sacks from the fast moving postal car at said platform. The trial resulted in a verdict and judgment for plaintiff for $2,000 damages and costs of suit. To reverse this judgment, defendant appealed. The evidence in our judgment fairly established the following facts : That defendant, by a contract with the government, was carrying the mails in its own postal car forming a part of a regular train, under the management and control of its servants and agents; that said train at the time deceased was injured, was running through the city of Sumner at a very high rate of speed and in violation of the ordinance of the city limiting the rate to twelve miles an hour; that the city of Sumner was then a regular station on the line of defendant's road, where mail matter was discharged from, and received upon defendant's trains; that a short distance from the west end of the platform a crane to receive the mail sack was erected by appellant and mails were received and thrown off at that point for some time. There was no street at this point and the approach to the steps leading up to the platform was at the east end, about two hundred feet distant. Appellant permitted a ditch and mud holes to remain about the place where the mail was thrown off near the crane, and complaint was made by the

postmaster to appellant that mail sacks thrown into these muddy places were injured, and after such complaint for a long time anterior to the injury mail sacks were thrown from trains upon the platform and in the public street at its east end. Appellant, through its servants and agents, knew of this practice, and that numbers of people were in the habit of coming on the platform and in the street when trains were passing. On the day in question, defendant's accommodation, due at Sumner before the mail train, was late, and deceased not knowing this fact, but hearing the approaching train, and supposing it to be the accommodation which stopped at Sumner and from which the daily papers were supplied by the train boy, came over to the platform to get his paper, stepped up at the east end, and while standing on the north edge of the platform was struck and knocked down by a mail sack thrown by the postal clerk from the swiftly moving train upon the platform, and was so injured that his death resulted. No contributory negligence on the part of deceased is disclosed by the record, and the jury were warranted by the evidence in finding defendant guilty of wilful negligence as averred in the declaration. Its servants and agents knew this platform was a place where a number of persons were likely to be at times when trains were passing; that it had been the practice of the postal clerks to throw mail sacks from moving trains upon the platform; and it was bound to take notice that the natural and probable consequence of such practice might be injury to those standing upon the platform. It had control of the movement and speed of its train, and at least such control of the postal clerk as to prohibit him from doing an act that might result in such injury. Defendant should be held liable for all of those consequences which might have been foreseen and expected as the results of its negligence. 2 Parsons on Contracts, 1st Ed. 456.

The proximate causes of the injury to, and death of plaintiff's intestate, was the wilful negligence of appellant in running its train at a high rate of speed and permitting the mail sack to be thrown from the moving train upon the platform; the mere fact that the act of the postal clerk co-operated does not

affect the question. Had the train been stopped, or its speed reduced so that the sack would not have struck the platform with force and rebound as it did, or had it not been permitted to be thrown on the platform, the injury would not have occurred. It is contended, however, on behalf of appellant, that their postal clerk " was not the agent or servant of appellant, nor one over whom it could exercise any control whatever," hence, appellant is not chargeable with his acts, and is not liable therefor. We apprehend that a railroad corporation in the use of its franchise must, like natural persons, so exercise its rights as not to negligently injure others, and is responsible for the negligent acts of its servants, and for the habitual carelessness which it knows of and permits to be practiced by others on its trains, and is also liable for the negligence of any other company or person whom it permits to use the road. Shearman & Redfield on Negligence, 4th Ed., Sec. 459; P. & R. I. Ry. Co. v. Lane, 83 Ill. 448. In this case last cited appellant was the owner of track, right of way, and franchise of the road when the accident occurred, and by agreement permitted another company to run its trains over the track from Rock Island to Orion. The accident was received by the derailment of the baggage car in the train of said company while running over that part of appellant's track. It was held that the corporation, holding the franchises and exclusive right to operate a road, must so use it as not to endanger passengers or property, whether the use be by itself, or others they may permit to use the road, and if it permits another to run its trains on and over its tracks and injury grows out of the negligence of the company thus permitted, the corporation owning the road and franchise will also be liable.

In the case of Carpenter v. Boston and Albany Ry. Co., 97 N. Y. 494, a passenger waiting to board defendant's train was injured by a mail sack carelessly thrown from a postal car upon a station platform. In the opinion it is said, defendant constructed the postal car and owned it. It was occupied under defendant's permission for a certain use, and it may be conceded there was nothing in the nature of that use to

require defendant to expect the contents of that car would be violently cast upon the platform while its train was in motion and before the passengers therein could reach the cars. Had this accident, therefore, happened on the first passage of the car the defendant might be excused on the ground that the mere act of the postal clerk in throwing off the mail bag at that place without the previous knowledge of the defendant of his intention to do so was not negligence on its part; but the fact is quite otherwise. The practice which led to the accident was a familiar and usual one; it was proven by uncontradicted evidence that this method of discharging mail bags from the postal car upon the platform provided for passengers, and while they were upon it and exposed to injury, had prevailed for a long time under circumstances from which notice to defendant might be fairly implied, and with the actual knowledge of defendant's agents in whose presence the act was frequently, if not daily performed. They were, therefore, chargeable with notice that the mail bag was likely to be thrown off in the same manner and under the same circumstances at any arrival of a postal car. By this knowledge defendant was brought fairly within the rule which enjoins care not only on the part of itself and its servants, but also like care in preventing injury from the careless or wrongful act of any other person whom it permits to come upon its premises. The occupants of the postal car are no exception to this rule. They come under a contract voluntarily made by the defendant and which secured the carriage and delivery of the mails upon such conditions as it imposed or acceded to. Its police power extended over the persons employed in it while they were on defendant's track or at its stations, certainly not to interrupt them in the discharge of their official duties, but so far as practicable to prevent injury to those for whose safety it was bound to provide. The same rule as announced in the foregoing quotation with regard to the duties, power and liability of railroad corporations carrying mails is also held in Snow v. Fitchburg R. R. Co., 136 Mass. 552. It is said, however, in each of these cases the party injured was a passenger, and also that defendant in each case

voluntarily contracted to carry mails, while in the case at bar deceased was a stranger, to whom appellant owed no duty of protection, and it was *compelled* to carry the United States mails by law; hence cases cited are not in point. The same law was in force when those cases were decided, and as we understand the evidence, no coercion compelled appellant to carry the mail, but it did so voluntarily and without objection, for a compensation agreed upon. Nor do we understand the right of recovery in those cases is based alone upon the neglect to perform a duty which the defendants owed to a passenger, but it rests upon the broad principle that one must so use his own as to not unnecessarily and wilfully injure the person and property of another.

Defendant permitted the daily papers to be sold upon their platform by the train boy on one of its trains to the citizens of Sumner, and they were then, with the knowledge and consent of defendant, invited and permitted to come upon the platform when trains arrived, to purchase papers. For this purpose deceased came upon it and was lawfully then entitled to the protection appellant could afford by doing its duty and preventing the wilful negligence of its servants in running its train at a high and unlawful rate of speed, and preventing the discharge of mail sacks from the swiftly moving train upon said platform. We have examined the case cited by appellant, 61 Wis. 326, where an apparent different ruling from that in the New York and Massachusetts cases, *supra*, is made; but the decisions in the two latter cases are fortified by numerous authorities, while the first seems to be unsupported except by the ingenious reasoning of a very learned judge, in which we are unable to concur. We are of opinion that the averment in the declaration touching the city ordinance was sufficiently certain to justify the admission of said ordinance in evidence, and it was not error to admit evidence showing that numbers of people usually came upon the platform when trains arrived, without objection by defendant. It was not proper to permit plaintiff to show by witness Waller that he had been struck by a mail sack while on the ground a rod and a half from the platform some two years before this accident, but evidence

was properly admitted to show the practice of throwing mail sacks from moving trains onto the platform. It was error to admit this testimony on behalf of plaintiff:

"Q. I will get you to state what it was worth a year to support the family he had, his wife and two boys, at that time?"

"A. I suppose a family of that size, it would take in the neighborhood of $500."

The damages recoverable were not necessarily the entire expense of supporting the family, but the amount of the just compensation for the loss of means of support which deceased might have provided had he lived. It was error also to give plaintiff's fifth instruction with this clause contained therein: "Then the defendant is liable for all damages occasioned thereby." This did not state accurately the measure of damages for which defendant was liable. That measure is fixed by the statute, and we have already indicated the scope of it.

The sixth instruction given for plaintiff is in conformity with the view we entertain as to the law, and was properly given. The refusal to give defendant's fourth instruction as requested, was not error, and it ought to have been refused altogether. In view of instructions which were given for plaintiff touching the rate of speed, we think defendant's fifth instruction should have been given. It was not error to refuse defendant's sixth instruction. We might not feel compelled to reverse this judgment on account of some of the errors mentioned, but those which affect the question of damages were prejudicial to the rights of defendant upon a material point, and all the errors ought to have been avoided, and doubtless will be if the cause is tried again.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*